UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIA GARAY,
    Plaintiff,

v.                                               3:17cv1596(WWE)

MANCHESTER POLICE DEPT.
CHIEF MONTMINY,
LIEUTENANT GRANT,
LIEUTENANT ELLSWORTH
SERGEANT ROSSETTI,
OFFICER WAGNER,
    Defendants.

### **RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Maria Garay alleges that defendants Manchester Police Department ("MPD"), Chief Montminy, Lieutenant Grant, Lieutenant Ellsworth, Sergeant Rossetti, and Officer Wagner are liable for violations of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA") due to national origin, ancestry, gender, and sexual orientation discrimination; hostile work environment; and retaliation. In addition, she alleges the common law actions of intentional infliction of emotional distress and negligent infliction of emotional distress.

Defendants move to dismiss the state law claims and the Title VII

claims for sexual orientation discrimination, hostile work environment and retaliations claims.

Plaintiff does not contest dismissal of her CFEPA and negligent infliction of emotional distress claims. However, plaintiff opposes the dismissal of the Title VII and the intentional infliction of emotional distress claims.

## BACKGROUND

The following background is taken from the allegations of the complaint, which are considered to be true for purposes of ruling on a motion to dismiss.

Plaintiff has worked as a police officer for MPD since December 2001. In 2006, after she became a Field Training Officer ("FTO"), plaintiff was responsible for training new officers.

In June 2015, plaintiff noticed that she was not being assigned any new recruits. She confronted Lieutenant Grant, who admitted that one or more sergeants were retaliating against her for passing a certain officer through the FTO Program. After this discussion, plaintiff endured a series of reprisals and escalating harassment, including, inter alia, being shunned by other officers; being told to meet with her union representative after

indication that she was subject to an investigation; receiving a text stating, "Fucking nasty bitch" from an officer; and finding a porcelain angel doll with broken legs, arms and wing in her laundry bag.

On October 7, 2015, plaintiff, who was then pro se, filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In her CHRO complaint, she asserted national origin, ancestry and gender discrimination in violation of CFEPA and Title VII.

The CHRO's release of jurisdiction was dated June 27, 2017. On September 25, 2017, plaintiff filed the instant complaint. The defendants were served on October 5, 2017.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A complaint should not be

dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### Sexual Orientation Discrimination

Defendants assert that sexual orientation discrimination is not recognized as a plausible Title VII claim. However, the Second Circuit recently overruled its prior precedent by holding that sexual orientation discrimination is actionable Title VII sex discrimination. Zarda v. Altitude Express, Inc., 883 F.3d 100, 114-115 (2d Cir. 2018) (sexual orientation is a function of an individual's sex).

### Failure to Exhaust Administrative Remedies

Defendants argue that plaintiff failed to satisfy the exhaustion of administrative remedies requirement of Title VII relevant to her claims of sexual orientation discrimination and hostile work environment. Defendants maintain that she never asserted claims for sexual orientation discrimination or for a hostile work environment as to any protected class.

The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action. Stewart v. United States Immigration and Naturalization Service, 762 F. 2d 193,

198 (2d Cir. 1985). However, an exception to the exhaustion requirement applies where conduct complained of "would fall within the scope" of the administrative investigation that can reasonably be expected to grow out of the claims alleged in the administrative charge. <u>Butts v. City of New York Dept. of Housing</u>, 990 F. 2d 1397, 1401 (2d Cir. 1993). This allowance for "loose pleadings" recognizes that administrative charges are often filled out by employees without counsel. <u>Crespo v. New York City Transit Authority</u>, 2002 WL 398805, at *7 (S.D.N.Y. 2002).

In this instance, plaintiff filed her administrative filing without the assistance of counsel. She checked the box for "discriminated against me in the terms and conditions of employment." Under the header identifying her protected class, she checked the boxes for "national origin," "ancestry" and "female." She alleged: "Up until a few months ago, I was the only heterosexual Latino woman. Until recently, the unit consisted of only white male officers." The administrative complaint provided further that she discussed her feelings of being "black listed" to Lieutenant Grant, and that he explained that "the reason one Sgt or more feel they do not want to use you as an FTO (Field Training Officer) is because Officer Hohl (female, white) made it through the program and they are blaming you." In her final

5

allegation, she stated, "I have been treated and continue to be treated unequally because of my sex and ethnicity."

The Court is mindful that plaintiff filed her administrative charge without the benefit of counsel, and that all inferences of fact must be construed most favorably to plaintiff. On its face, the administrative complaint provides notice that the asserted discriminatory conduct concerns a Latino, heterosexual female, who allegedly suffered adverse treatment from the white male officers because she allowed another female to pass the training program. Thus, an investigation into plaintiff's administrative charges would reasonably encompass consideration of plaintiff's gender as female and her sexual orientation. In light of the complaint's assertion that she was the only female and Latino in a police unit consisting of otherwise "white male officers," an investigation into whether plaintiff was subjected to a hostile work environment based on her sex or her race, national origin or ancestry would also have reasonably grown from the charges of discrimination in the administrative complaint. Accordingly, the Court finds that plaintiff's claims are not barred as a matter of law for failure to exhaust her administrative remedies.

Retaliation

Defendants maintain that plaintiff's retaliation claim fails because she has not alleged an adverse employment action.

For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that the defendant took an adverse employment action against her "because" she opposed an unlawful employment practice. Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 90 (2d Cir. 2015). For purposes of Title VII retaliation, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). This definition of adverse action covers a broader range of conduct than that applied to discrimination claims under Title VII. Vega, 801 F.3d at 90. In Burlington, the Supreme Court elaborated upon the standard:

> Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch

> that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

548 U.S. at 69.

Here, plaintiff's federal complaint alleges, inter alia, that other officers would suddenly stop talking and laughing when she entered their area; that Lieutenant Ellsworth would not return her phone call inquiring about an opportunity; that she was told to meet with her union representative after indication that she was subject of an investigation; she received a text stating, "Fucking nasty bitch" from an officer; and someone put a porcelain angel doll with broken legs, arms and wing in her laundry bag.

To determine whether plaintiff was subjected to adverse retaliatory action, the Court will need to review the context of the conduct. Such determination may be made after a consideration of the evidence rather than the pleadings. The Court cannot find as a matter of law that plaintiff was not subjected to retaliation in violation of Title VII. Accordingly, the Court will deny the motion to dismiss.

Intentional Infliction of Emotional Distress

Defendants assert that plaintiff has failed to allege conduct sufficiently extreme and outrageous to support her claim of intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental distress of a very serious kind. DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991). Connecticut courts have narrowly defined the boundaries of extreme and outrageous conduct. See Grasso v. Connecticut Hospice, Inc., 138 Conn. App. 759, 774-5 (2012) (citing cases finding no intentional infliction of emotional distress).

Here, plaintiff alleges that the individual defendants carried out a plan to ostracize her and that she sustained various expressions of hostility. In the context of police unit, such conduct could be considered extreme and outrageous causing mental distress. Plaintiff argues that such conduct could have exposed her to danger if her co-officers did not provide her with backup. Further, the broken angel doll could be interpreted as a threat from her co-workers. Accordingly, the Court will deny the motion to dismiss on this count. On summary judgment, the Court may determine

each defendant's level of involvement in the asserted intentional infliction of emotional distress.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss [doc. #13] is DENIED as to the Title VII and the intentional infliction of emotional distress claims. The motion to dismiss is GRANTED as to the CFEPA and negligent infliction of emotional distress claims.

/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge

Dated this 26th day of April, 2018 at Bridgeport, Connecticut.